I have two issues to address here. The first I want to talk about is the assessment of fees as costs. In this case, after there was a dismissal of prejudice, there was a motion filed by the defendant to force the plaintiff to pay the cost of provisional directors that had been appointed to the defendant. And let me back up a little bit. This whole thing started when four members of a board of eight decided that they wanted to contest a complaint filed by Charles Ryan. They sent Mr. O'Donnell to court three separate times. Each time his appearance was stricken because Judge Brandt correctly found that Mr. O'Donnell couldn't represent four members of an association who claimed that he was representing the association. Basically, there were just four members of an eight member board who kept sending Mr. O'Donnell to the court. Judge Brandt decided that, well, this is not going to work because obviously these four provisional directors, Brian Neminoff and Chet Fuller, at that point, to go to and sit on the board and at that time they said fine, we'll agree to hire Mr. O'Donnell as counsel. The case continued for a brief period of time. There were two things that happened. First, when Judge Brandt appointed the two provisional directors, in his order he said the provisional directors are to bill the homeowners association at this rate and the homeowners association is to pay that amount for whatever their time was. Right before the case was dismissed with prejudice, there was a stipulation prepared by the homeowners association, the defendant, and the defendant is to pay. That stipulation was signed by both counsel and then there was a dismissal with prejudice signed by both counsel. So this only arises after there's a dismissal with prejudice. A new board comes in and says, well, we think we ought to try to get these provisional directors fees back as costs. And there's two reasons that the court erred when it decided these were costs that could be assessed against the plaintiff. Number one, when you look at the causal connection here, these directors were assigned so that this homeowners board could act because it couldn't It was 4-4, nobody could get anything done, nobody could even hire an attorney. So Judge Brandt said, well, I'm going to appoint two directors for the purposes of breaking the deadlock so at least they can hire an attorney. Why wouldn't he just appoint one to be sure to break the deadlock? I'm not sure. He came out of chambers, looks like from the But the point is, it didn't have anything to do with the litigation itself. It had to do with this board that was dysfunctional. It wasn't a cause. If you look at the cost definition, costs are to reimburse the prevailing party for expenses necessarily incurred in the assertion of rights. Now, that happened, didn't it? The corporation can't come into court without counsel. That's correct. Your client insisted that the court shouldn't recognize any counsel selected only by four people in the board. So why isn't that a necessary cost of litigation? Well, I think there's two levels here. One, the board had to act. But two, is it a cost of litigation? There's no evidence that costs for asserting those rights. And I think that's the distinction here. That simply voting to say, well, we're going to hire counsel and send him to court is different than what counsel spends or what is expended on behalf of the prosecution of the case. And I think that's the distinction here. That they had nothing to do with the prosecution of the case, at least according to the record, other than say, fine, we'll break the tie and we'll agree to hire counsel. But I think that's different than saying, well, I had expert fees, I had deposition fees, I had service fees. None of these fees were expended in assertion of the actual rights in the court. It's simply, we want to hire an attorney. But even if they were, I think the defendant is stopped and is waived any right to collect those costs. Because, number one, there was an order by the judge saying, defendant has to pay this. I'm going to break the deadlock. If you look at the statute regarding appointment of directors, it is the corporation that pays the fees. But thirdly and most importantly, counsel for defendant prepared a stipulation that says the director is going to be paid what the homeowners association is going to pay. That stipulation was entered on the day the case was dismissed and signed by both plaintiff and defendant's counsel. Then both counsel signed the dismissal with prejudice. Without any hint that, well, we're going to come back and now, even though we signed the stipulation and even though we signed the dismissal with prejudice, we're going to come back after the case is dismissed and then say, well, we want those costs back. We want the fees of the provisional directors. And I don't think the court can say that they hadn't waived or should be stopped from asserting that after they signed a stipulation saying we're going to pay. That matter could have been taken care of before the case was dismissed with prejudice. It might not have been dismissed with prejudice if they would have raised it and said, well, even though we're signing the stipulation, we want to reserve a right to come back and say we want to collect this from the plaintiff some day. That wasn't done. The stipulation and the dismissal were done on the same day as signed by both counsel. With respect to the actual costs themselves, it's an interesting issue about the review here. I think the case that I cited in my brief, this court has to look at whether or not this is a category of costs that can be considered assessable costs under the statute. Because if you look at the case, it says you just don't rubber stamp the trial court because you get all these ad hoc rules. And I could find no case that says, well, if you've got an order that says you're going to appoint provisional directors to a board, that those are court costs. And I think this court needs to say there is no precedent for that and there's no reason for that. Because again, it doesn't fit the definition of court costs because it wasn't an expense that was incurred in the court, an assertion of the rights in the court. It was simply a vehicle to get this deadlock solved. I'd like to turn to the other issue that's before the court, which was the assessment of the attorney's fees in favor of the Dover Point Homeowners Association. To recover fees when you've got an injunction, there are two things that you need to satisfy. One, you've got to show that there was a wrongful issuance of the injunction. And two, the statute requires that you file for damages such as attorney's fees after the dissolution of the preliminary injunction of the TRO and before the case is finally disposed of. Neither of these requirements were met in the underlying case. The trial court made a specific finding that the evidence did not show that the injunction was improperly brought. That's what this court has before it. That is a requirement under the Merriam-Meadow case that defendant cites that you can't award the fees unless the injunction was improperly brought. Judge Brandt found that it was not shown that it was improperly brought and should not have awarded the fees based on that premise alone. The second issue is that the fees were not raised until after the dismissal with prejudice. And again, we've got waiver and estoppel issues, but even more seriously, in this case there was a stipulation to dismiss signed by both parties with prejudice. After that, there was a claim that we want to come back and claim attorney's fees that we expended in the prosecution of this case. If you look at the record, most of the attorney's fees were incurred by this gang of four who kept sending Mr. O'Donnell back to court and he kept getting his appearance stricken three separate times. So the court should not be bound by some board who convenes after the case is over, after the dismissal with prejudice, there's evidence that they said, oh, we'll agree that all Mr. O'Donnell's fees should have been paid by the association and we agree that they should be paid for the duration of the case. I don't think that's binding on this court. If Mr. O'Donnell was not properly before the court, I don't think some homeowner's board that has convened after the case is over that says, well, we agree all these fees should be paid and we want them paid, that's not binding on this court and Judge Brandt should have rejected and did reject the fact… Right. And I think he properly denied it, but I think that could be one of the reasons that he did so. There was no, let me back up, the provisional directors never voted to say, look, we want to go collect attorney's fees because we think the injunction was improperly brought. They were discharged, the case was dismissed, a new board convened, and this new board says, well, we want to collect attorney's fees, so they directed Mr. O'Donnell to go file something at that point in time. Again, the case had been dismissed with prejudice by agreement at that point. Judge Brandt found it was too late. I think there are other reasons that that should be affirmed, most of which is that the attorney's fees were incurred by Mr. O'Donnell when he was not properly retained. And I don't know how you go back and say, well, I get attorney's fees for a period of time, but I didn't represent anybody. I may have represented this before, but that's not who the named party is. It's Dover Point Homeowners Association, and we don't even really know when Mr. O'Donnell, if ever, became their attorney. Well, even if they can't agree, didn't somebody have to do something to avoid a default or something like that? I don't have votes to fight this case, because maybe it was correct. As Judge Brandt said, I didn't find that this was improperly brought. And if it's not improperly brought, then there's no way that the attorney's fees can be awarded. So I think Judge Brandt properly found it wasn't improperly brought, and secondly, it was too late to bring it. And as an additional factor, I think most of these fees were incurred when nobody was retaining Mr. O'Donnell with any authority. They were sending him to court, but they knew they didn't have the votes. They knew they were not a majority, but they elected to spend the money. So I guess equitably, you'd say, well, why would the plaintiff have to pay for these guys who don't have any authority, who want to hire an attorney, who want to run up the fees, and now, okay, after they dismiss it with prejudice, they decide, well, that was maybe a bad idea, let's go try to collect it from the plaintiff. And I think that's what happened here. I would request that the court reverse the issue regarding costs. I don't think those are costs, and they're certainly not related to prosecution of the suit and affirm Judge Brandt's denial of the award of attorney's fees. Thank you. Thank you, Mr. Rock. Mr. O'Donnell? May it please the court and counsel. Members of the court, by way of background, at the time this election all took place, there was one lawyer on the board, that was Mr. Rock. Contained as one of the exhibits in Mr. Rock's brief as cross appellee is, I believe, the complaint. What's important here is that the references to there not being sufficient votes, etc., etc., the first meeting that was held after the TRO was obtained ex parte, an email was sent by Mr. Rock as a pro se litigant, essentially telling this board at 9 o'clock on the Tuesday after Memorial Day weekend, I'm going to be in court in two hours, and I'm going to file these pleadings, and I'm going to obtain this relief against all of you, and by the way, I'm a registered agent. Normally there would be service. That's what happened here. So seven laymen and women, I believe there was two women on the board and five other men besides Mr. Rock, they get an email at 9 o'clock on the Tuesday after Memorial Day weekend. It's true, Mr. Rock sent an email on the Friday before Memorial Day weekend at 5 o'clock saying, I have all these problems with this election, and threatened litigation, but there was never service or process, so under the TRO statute, what's important for this case is that this is an ex parte TRO that's entered at 1110 or so. What we know in this case is there was no proceedings held on the record because when we ordered the record, Tana Hess, the court reporter for that courtroom, searched the database and searched the record and could not find any evidence provided. That's important because under the TRO statute, if you're going to get an ex parte TRO without actual service or process, there has to be a verified pleading. The complaint that Mr. Rock filed to obtain that TRO is not verified in this case, so we don't know what evidence he provided to Judge Prant to have the order entered. But within day of that order being entered, the four people who had terms that were unexpired contacted me. They had had a meeting. They believed, appropriately so not being lawyers, that if four people who chose to not run for re-election didn't come to that meeting, that four of them ought to do something. The four that didn't come to the first meeting in early June were those whose terms were up. The ballots were intended to have been opened in early June as all the ballots had been mailed out in early May. That being said, there were only two meetings of this board. I don't believe there's any indication of a record of three meetings. But what happened is when these four came to me, I filed a 2-301 special appearance motion to dismiss and basically pointed out that, look, he's this registered agent. He can't go obtain ex parte relief against the corporation that he is a fiduciary for. That was filed on June 8th, set for hearing on June 14th. On June 14th, when I walk into the court hearing, I get a motion to strike my appearance saying, hey, look, we didn't have a quorum. Well, that Judge Prant did rule that because he ruled essentially that, hey, look, four people aren't a quorum for eight. Bylaws said you have to have a majority. The board probably appropriately believed that because Mr. Rock was interested in the outcome of litigation, his vote shouldn't count. Judge Brant indicated otherwise in an order, but that order is not on appeal. Mr. Rock solicited the appointment of directors. That's clear from the record. To answer your question about why did he appoint two, I think it had something to do with the fact that the judge might view Mr. Rock to not be one to participate in the deliberations. After the appointment was had, another meeting was had, and five of the directors were there and voted to retain my firm again. Four voted to not retain, but because Mr. Rock went to that meeting, the judge ruled again that a five-to-four vote was not sufficient because the bylaws said you had to have a majority of board members present. Because Mr. Rock went to that meeting with Mr. Fuller and Mr. Neminoff at the meeting, Judge Brant struck our appearance again. What was our purpose was just to get this case decided on the merits, but we had three months of monkeying around. The third time they got together was in mid-July. I think the board knew it was on July 22nd. There's an affidavit in the record that says that. Essentially what happened at that point, the two people who chose not to run for re-election just resigned. Now, instead, Mr. Rock is on the board. Another individual whose term was also expired is still on the board. Then the four that hired me to begin with were still on the board, along with Mr. Neminoff and Mr. Fuller, and they voted again to hire me. At that point, I re-noticed the motions that I had filed. The second motion I had filed on the day of our hearing, June 14th, was a motion to dismiss, raising the fact that, and this is probably the most important issue for the purposes of the damages the association incurred by virtue of attorney's fees and the director's costs under the damages statute. My motion to dismiss raised that, look, the underlying initial ex parte TRO never complied with the TRO Act. It didn't spell out what Mr. Rock's irreparable injury was. It didn't set a deadline not to exceed 10 days as required by the statute for that order to expire. And again, it was not even a verified complaint, which is the basic requirement of any ex parte TRO that a court would entertain. The costs are clearly taxable. They were solicited by the plaintiff and suggested to be allowable under the Not-for-Profit Business Corporation Act. Judge Brandt reflected the same in his order. Those costs were necessarily incurred in the assertion of our rights in this case. There's no question about that. I think the award of the costs should be affirmed. There's no question we obtained a dismissal on September 14th. Now I'd like to address the issue of estoppel raised by counsel in the brief. What happened is after they voted in July, the two directors had submitted large bills, as the court can see from the record, submitted large bills for going to these three meetings they went to, two of which there were votes held at. I think Mr. Fuller and Mr. Neminoff both tried to bring this to a conclusion, and for what it's worth, when two people quit the board, they had maybe a little clearer marching orders. But that being said, the stipulation was simply to discharge them. Mr. Neminoff and Mr. Fuller didn't want to be charging the board anymore when they understood their purpose to be resolve the issue of quorum and resolve the issue of retention of counsel. When I prepared that order two or three days before our hearing on September 14th, what I understood, notice for September 14th, actually it was September 13th when Judge Brandt bumped us back a day because of conflict, what I understood I was going to do was enter the stipulated order and have Mr. Neminoff and Mr. Fuller discharge and argue the two dispositive motions that I'd filed three months before but could not ever bring before the court for actual argument because after I filed the first dispositive motion, Mr. Rock moved to strike my appearance in this case. That is not a common issue I've ever come across. I didn't find any case that dealt with the issue of the director's costs, but if you look at the order that Judge Brandt entered taxing those costs, there's cases that cite payments to special masters that are appointed by the court. I think this is analogous to that That's true. The statute here that gave Judge Brandt the basis for the appointment was the Business Corporation Act. Now, to the issue of damages, the argument that you have to see damages under the TRO statute before a TRO or preliminary injunction is dissolved, that doesn't make any sense. You'll see cases if you read all the cases that I cite in my brief, those cases have authorized an award of costs on appeal or after a TRO that is dismissed. circuit court is reversed on appellate court and then the defendant that's aggrieved has been moved on after remand to seek those costs. Here, I came to court on September 14th with the belief that the plaintiff had filed no opposition to our motion and my motions were going to be granted. We get to the court hearing, he says I'll stipulate to dismiss the case. That's what we did. We didn't have an argument about what's proper service under 2-301 in cases from back in 1920-1930 about you can't serve yourself if you're the fiduciary or about whether or not they complied with 11-101 in getting the ex parte TRO. We just, the case was filed that discharged the directors was not the dismissal order. That stipulation was prepared. Judge Grant's order entered in June said they had to pay. There was nothing in my stipulation that said any different. The order was going to be entered whether we had the motions to dismiss argued, granted, or argued and this is not a situation where the situation was covered by insurance because there was an exclusion of insurance policy for suits brought by directors of the association against the association. But, what is finally disposed of, that's, I mean, the idea is Judge, on September 14th when I have two dispositive motions set for hearing, I should have anticipated that we would have him come in that day and essentially confess the motions and voluntarily dismiss the case so that the TRO just goes away right then and there. I can't, I'm not clairvoyant. I wasn't able to know that that was going to happen. What we did know is we were going to have a stipulated order and it said they were discharged so we're not looking at $200 an hour every time they have a meeting. But, in this case, and the cases cited in our brief make very clear that the defendant that obtains the dissolution of an ex parte TRO or any preliminary injunction, whether ex parte or not, when it's essentially no different than filing a motion to tax costs, which we did as well, as to just the director's fees. The petition for damages we filed addressed both the costs paid to the directors and the attorney's fees that they all incurred. I can see what Mr. Rock is saying about, okay, they voted finally the third time on July 22nd with the quorum, with the new directors there, and they hired Mr. O'Donnell the third time. Certainly, the association, the new board that got seated after the TRO was dissolved, didn't want to have those four paying my firm themselves for what was clearly board-related activity on their part. Mr. Rock's position that you would say, well, should they have counsel or not? Well, they have to have counsel because they're a corporation, as your Honor pointed out. The four people that dealt with this case were the four who still had another year on their term in June. But if you look at the Marion Metals case that's cited, that is the only case that's on point on this issue, and it says essentially that if a party obtains a voluntary dismissal, the voluntary dismissal itself, and this is a case that's cited in 1993 by the court, the voluntary dismissal that that defendant obtains of the TRO can serve as the basis for an award of costs. But the lawsuit in Marion Metals was still ongoing, because there was a counterclaim, and the court said the case goes, and the case is not over, even though the plaintiff's case is. What the defendant did was the defendant filed a motion for leave after the TRO was dissolved on essentially a concession. The TRO was resolved. That's not an issue, right? Right. But the case wasn't dismissed. And maybe I'm thinking of another case, but I think there was a counterclaim. There was. In Marion Metals, the appellate court characterized the petition for damages as a counterclaim, because what the defendant that saw its costs as damages and its attorney's fees as damages did in Marion Metals is they filed a motion for leave to file. I agree. I didn't file a motion for leave to file. I read the statute and read all the case law on that after it was brought to my new board. By the way, when the new board was seated, one of the people of the new floor was an attorney. Thank you. The Marion Metals case, though, Judge, as the Buzz Barton case does as well, and then there's another case I didn't read, which is the Bolts case. The Bolts case essentially, as I believe on the cost issue, sets forth what the standard of review is as to the damages under the TRO statute. And they basically say in that case, look, you have to examine the pleadings. You have to examine whether the underlying TRO that was entered complies with the TRO statute. In the Bolts case, it's a 1988 appellate court case, the conclusion of the appellate court was, look, in the face of a dispositive motion, when the plaintiff confesses a motion to dissolve and doesn't file any appearance or doesn't file any opposition, that alone, per the appellate court, contrary to the ruling of the circuit court, that alone can serve as a basis for determination that damages should be awarded. If you look at the TRO statute, what's interesting is there's no language in the TRO statute that says that the dissolution has to be, or the award of damages has to be based on some sort of wrongful issues. That is a language that's come about in the fact. But that Bolts case is important because they said, look, if you look at whether the TRO that was entered ex parte complied with the TRO statute, they said it did not. They said, therefore, when we look at that and look at the other pleadings that were filed and look what happened, that is the defendant came in and filed a motion to dissolve that was unopposed, they remanded for an award of damages and analysis of what the damages should be. I would submit that that case, your honor, as well as the Marion Meadows case, are as on point as we're going to find on this very narrow area of the law. Was there, did you, aside from the stipulation about the directors, was there a stipulation as to the voluntary dismissal? There was. Mr. Rock came to the hearing that morning and said, I'll dismiss the case. I had the motions, the dispositive motions were noticed for what he did. And in fact, because normally if somebody wants to voluntarily dismiss, he says, wait a minute, judge, I don't want to put us through lawyer hell here for however long. We want some cause. Was any of that brought up before? Judge, as soon as we had our, not before. I mean, I'll just tell you, I expected right then and there to have the hearing. We didn't have the hearing. He confessed it. I obtained the relief sought by the motions. I go back and report. They open the ballots because the order says the TRO is dissolved. They open the ballots. They have a meeting. I get my next direction, which was within the 30 days of the entry of the dismissal order. I hope that answers your question. Thank you. I would ask the court to affirm. I don't know if anyone has a question. I don't believe so. I ask the court to affirm the award of the cost. And I also ask the court to remand this matter for an award of our damages. The damages are inclusive, not only the cost paid to those directors, but also the attorney's fees incurred by the association in obtaining a dismissal of the case and a dissolution of the temporary restraining order. Thank you. Thank you, Mr. O'Donnell. Excuse me, Mr. Rock. Anybody? I want to address just a couple of remarks that are made here. I think there were words in the brief such as litigation tactic, and Mr. O'Donnell kind of indicated that, well, Mr. Rock was somehow delaying this action or taking improper action by striking his appearance. If you look at the record, and I think Mr. Rock said this to Judge Brandt in one of the hearings, is the problem with four directors sending an attorney to court is how do they speak for the defendant? That's the real problem here. That's why his appearance kept getting stricken was because he doesn't speak for the board. He's got four members on the board, and so does he speak for those four members or does he speak for the homeowners association? He can't speak for the defendant because he's been given no direction by a majority of the board. They're just sending him out there. That's what I think the court needs to drill down to, that it's not a litigation tactic to say you can't come in here unless the board gives you direction. Because how do we know Mr. O'Donnell was taking the right side of the equation here? So in a garden variety case where somebody's suing some board, do you get to depose the lawyer when he comes in to say, show me your certification that you've been approved by the board to be the lawyer here? No, but it was clear here that there wasn't. I mean, I think it was evident that only four members. Are you saying that it's possible that four members would vote for someone to represent them and the other four members would vote for someone else to represent them? Well, I'm saying neither four could vote. And neither one would be eligible to actually represent the corporation? It's not so much just the attorney, but how do you speak for the corporation if you're not a majority? How can you say, I want to fight this thing that says the election procedures are bad and they're not what we agreed to? How can four members of the board decide to do that? That's not the position of the corporation, it's the position of four members of the board. And I think that's what we need to keep in mind here. The board's not speaking to Mr. O'Donnell. Four members of the board are speaking to Mr. O'Donnell. And this whole issue about service, I think, is a red herring because if you look at the record, four days after the TRO was in, Mr. O'Donnell was in court. There's a reference to, he represents two directors. That's in the order of June 3rd of 2011. He was there when it was converted to a preliminary injunction. Speaking of the TRO, did it comply with the statute? It was not verified. So there'd be a no? Well, there's no, Mr. Rock's an officer of the court, there was no recording of what happened at the hearing when it was entered. And I have no knowledge of what happened. So, I mean, it was not verified. I don't know if he said something in court to attempt to verify. I just don't know. Record's silent on that. Thank you. The Marion Metal case, I want to go back to that for a moment. Because Marion Metal, I think, confirms that you have to have a showing that the injunction was wrongfully entered. We have a judge finding exactly the opposite here. And without a finding that was wrongfully entered, there can't be damages. And Judge Brandt, again, both sides in the briefs, if you notice, made references to there were hearings that were never recorded. And motions that were never recorded. So we're all in the dark about what went on there. But again, Judge Brandt specifically said, I don't find that your evidence, defendant, shows that it's more probably true than not true that this was improperly entered. And without that finding, I think Marion Metal and all the other cases say, there's no recovery of attorney's fees. But again, I would go back to, I think the court should affirm the denial of the attorney's fees and reverse the assessment of the provisional director's fees and costs. Thank you. Thank you, Mr. Rock. And thank you both for your argument today. We will take this matter under advisement. I'm sorry? Doesn't he have something else? Oh, yeah. Judge. You're right. I apologize. Another rebuttal. No, you don't have to promise anything. Thank you, Judge McDade. I'm sorry. I apologize. I've already thanked you. I'll thank you later. Judge, as to the corporation's position that Mr. Rock just referenced, the record does show that once the third vote was had, we noticed those motions of substance. And at that point, I did receive a direction from the board, including the two provisional directors, to expeditiously attempt to get rid of this case before it cost the association any more money. That being said, what caused these costs to be incurred for the provisional directors was the fact that the plaintiff filed this suit and essentially, though not running for re-election, desired to challenge election procedures. And I would submit that what's important about that is that he was not a candidate. If you look at his complaint for the injunctive relief that was granted or the motion that was granted in the ex parte relief, it doesn't say what his damages are other than somehow his property values are going to decline. That doesn't show an immediate irreparable injury that's going to result, nor does it show any sort of indication that he has no adequate remedy to law. I don't know why he indicated in the pleading that his property damage would be affected by this ballot that's mailed out. They had the most comprehensive election of 210 houses they'd ever had, and they actually sent the ballots to the people by mail because in this day and age, everyone's busy, and a lot of people don't come to these meetings. They've got a 65 or 70 percent ballot return, and then the ballots are sealed by the court's order for three and a half months while they figure out, hey, who's going to represent them? They're calling the four board members who are still on expired terms. Those board members are being asked, hey, who won the election? Well, we can't tell you. The ballots are still in the box. But if you look at the Illinois Funeral Homeowners Association case, it's a 1958 appellate court case that's still good law when you quayside or shepherdize it. It just says, Judge, on this issue of the Marion Metals case, and it's holding along the same lines, that if the temporary injunction is dissolved, the defendant is entitled under the statute to suggest his damages and have those damages assessed whether the case has been disposed of on the merits or not. That's the holding in that case. That's why after we obtain the dismissal of the case, but within 30 days of that dismissal order, we brought forth this petition as directed by the new board. A unanimous decision by that board to do so when they had four new members along with the four who had unexpired terms. The only requirement is, the statute just doesn't apply if there's been a permanent injunction. If a permanent injunction's entered against the defendant and it's later dissolved, you don't have a right under the statute by the statute's language to come and ask for damages. And that's what the cases say. That Buzz Barton case that's in my brief says that very clearly. If you get ex parte relief, you run the risk, as the plaintiff litigant going to court without opposition, of having to pay the other side's damages if your TRO is dissolved and does not become a permanent injunction. That's the import of all the cases, including those cited in our brief. The Buzz Barton case is one. The other one is the Bolts case that I cited as well, to your honor, a minute ago. When I filed these motions to dismiss, I wasn't aware, had no knowledge about whether my appearance would be challenged. These people come to me and say, look, we're on this board still, four people chose not to run for re-election, we want to get rid of the case. I filed the motions to dismiss. At that hearing, when the motion was set, he moved to strike my appearance, and that's essentially where we had three months of delay. I have no further argument, but if the court had any questions about the strange procedural nature of this case, I'd answer them. Thank you. Thank you, Mr. O'Connell. Thank you again, both of you. And we will take this matter under advisement and get back to you with a written disposition.